```
              IN THE UNITED STATES COURT
         FOR THE NORTHERN DISTRICT OF ALABAMA
                    SOUTHERN DIVISION
```

FILED
98 NOV 30 PM 12: 35
U.S. DISTRICT COURT
N.D. OF ALABAMA

JEANNINE SPANN,              )
                             )
    Plaintiff,               )
                             )
v.                           )   CV-97-AR-3140-S
                             )
BIRMINGHAM CITY BOARD        )
OF EDUCATION                 )
                             )
    Defendant.               )

ENTERED
NOV 3 0 1998

## MEMORANDUM OPINION

The court currently has before it a motion for summary judgment by defendant, Birmingham City Board of Education ("BBOE"). Plaintiff, Jeannine Spann ("Dr. Spann"), claims that BBOE failed to hire her for the job of Assistant Superintendent for Student Services on the basis of her race, gender, and age, and she brings suit pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq. ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA").

### Statement of Pertinent Undisputed Facts

In July, 1996 BBOE was undergoing a period of transition. While a search was conducted for a new permanent Superintendent, Dr. Geraldine Bell served as Interim Superintendent. Pursuant to BBOE policy, a Notice of Vacancy was posted for the position of

- Page 1 -

23

Assistant Superintendent for Student Services. Seven applications were received for that position, including one by Dr. Spann, who is a white female over 40 years of age. After all seven of the diverse applicants were interviewed by a racially-mixed committee; three of the seven, including Dr. Spann, were recommended to Dr. Bell as viable candidates. Of the three suggested persons, two were white and two were women.

After Dr. Bell became Interim Superintendent, three persons were appointed with the title "Special Assistant to the Superintendent." Of these three, one was a woman, and one was white; both of these persons were over the age of 50. Dr. Bell recommended a reorganization plan to BBOE during the summer of 1996, and that plan was adopted in late July. As a result of the reorganization, the three Special Assistant positions were eliminated. Dr. Bell recommended that the three persons who had held those positions be appointed to fill vacancies under the reorganized BBOE structure, on an interim basis. BBOE approved these recommendations on July 30, 1996, and Dr. Aaron Moyana, formerly a Special Assistant, was appointed to "Interim Assistant Superintendent for Student Services."

It is this appointment which forms the basis of Dr. Spann's complaint. She alleges that without having applied for the position, Dr. Moyana was appointed to the job for which she applied, and that she was effectively rejected for the job as an

act of discrimination against her because of her race, age and gender.

## Discussion

Because Dr. Spann has no direct evidence of unlawful discriminatory intent on the part of BBOE, she must establish a *prima facie* case of discrimination by presenting circumstantial evidence. Under the framework of *McDonnell-Douglas v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973), in order to make out a *prima facie* case, Dr. Spann must show 1) that she is a member of a protected class, 2) that she was qualified for the job to which she applied, 3) that she was rejected for that position, and 4) that an equally qualified or less qualified person outside her protected class was hired. *Id.* Dr. Spann has no trouble making out the first two elements under this rubric; questions remain regarding the third and fourth prongs. BBOE argues that Dr. Moyana was appointed to a job entirely different from the one for which Dr. Spann applied, suggesting that the job of Assistant Superintendent for Student Services was never actually filled. This characterization of the facts would necessarily lead to the conclusion that Dr. Spann was not rejected for the job, nor was a candidate of equal or lesser qualifications hired for it. Such conclusions would defeat the third and fourth prongs of Dr. Spann's *prima facie* case.

However, the court finds that this argument is simply not credible. Even Dr. Moyana concedes that the job of <u>Interim</u> Assistant Superintendent for Student Services was, in reality, the same job as Assistant Superintendent for Student Services. The responsibilities associated with the two job titles were clearly identical; only the purported difference in the expectation of permanency distinguished them.

Dr. Spann's contention that Interim Superintendent Bell was required to nominate one of the candidates suggested by the interview committee is simply unsupported. BBOE policy #2070 states only that:

> The Superintendent will submit nominations to the Board for appointment of all regular and part-time employees and consultants. The Board may accept or reject nominations, but election will only be upon the recommendation of the Superintendent. In the case of rejection, the Superintendent may make other nominations.

The policy nowhere requires that such nominations be made from among those candidates suggested by an interview committee, as plaintiff suggests.

Bell's actions do create the appearance that she was merely trying to circumvent BBOE policy by creating the interim positions. It appears that she wanted to skirt the standard procedures so that she should fill three (3) of the newly created positions with her former Special Assistants, including Dr. Moyana. However, even if Bell is guilty of ignoring proper

procedure, the court finds that it could not have been done for purposes of discriminating against Dr. Spann on the basis of her race, age, and gender.  Bell appointed two persons older than 50, one woman, and one white individual, hiring persons who bear <u>all</u> of the traits which Dr. Spann claims made her a target of discrimination.  In short, it appears that Bell may be guilty of "cronyism" or favoritism, but not racism, agism, or sexism.

    Spann perhaps intends to argue that she is a victim of discrimination on the basis of her particular <u>combination</u> of race, age, and gender – so-called "intersectional" discrimination, but she has presented no evidence whatsoever to support such a claim.  Dr. Spann suggests that the only proper comparator for her case is Dr. Moyana, for purposes of stating a *prima facie* case.  If that were true, a *prima facie* case of intersectional discrimination would be made out whenever someone other than an older white female were selected for a particular position to which Spann (or any other white woman over 50) applied.  This burden would be too light, would encourage litigation, and would intolerably encumber potential employers from choosing the best candidates out of fear of discrimination charges.

    Instead of looking for a single comparator, the court thinks it appropriate to examine BBOE's hiring practices in a larger context, either by considering how a particular position is

repeatedly filled over time, or by considering how the BBOE has filled other positions with a similar level of responsibility. Because the position to which Dr. Spann applied was newly created, there are no previous comparators in that particular position. However, during that same time period when the position of Assistant Superintendent for Student Services was filled, the BBOE also filled several other positions with a level of responsibility similar to the one Spann sought. The persons who filled those positions are proper comparators, and at least one of them, Dr. Linda Houghton, is a white female over the age of fifty (50). Dr. Spann has therefore failed to make out her *prima facie* case of intersectional discrimination.

If it were true that Dr. Moyana were significantly less qualified than Spann, an inference would arise that some form of discrimination had occurred, regardless of whether or not BBOE ignored its standard hiring procedures. That the procedures were neglected, as in this case, would strengthen the inference. However, the relative qualifications of Dr. Spann and Dr. Moyana are not so disparate that such an inference arises. Dr. Moyana holds a doctorate, has more than 18 years of experience, is a published author, has taught at the graduate level, and has administrative experience at BBOE by virtue of being a Special Assistant to the Superintendent. The court is reluctant to second-guess BBOE's assessment of Dr. Moyana's qualifications

relative to Spann's, and although these facts remain in dispute, the court must conclude that no reasonable jury could find that Dr. Moyana was materially less qualified for the job. Indeed, a jury might reasonably find that Dr. Moyana was more qualified precisely because his education and experience were not as specialized as Dr. Spann's.

Even if Dr. Spann had successfully presented a *prima facie* case of discrimination, BBOE has rebutted any presumption created thereby by stating a legitimate non-discriminatory reason for its hiring decisions. In BBOE's "Brief in Support of Defendant's Motion for Summary Judgment," it states:

> Much of the programmatic planning for the following school year, i.e. 1996-97, **by necessity**, had to occur in the summer months... The three (3) persons [i.e. former Special Assistants] who were part of the transition team, were **key** personnel, albeit temporary, in organizing the programmatic framework that was to be put in place for the 1996-97 school year. When their positions were eliminated, it was a prudent employment decision to continue with their assistance during the transition phase." *Brief in Support*, at 12 [emphasis in original].

BBOE and Dr. Bell certainly had good reason to prefer making interim appointments instead of permanent ones at the time of the July, 1996 reorganization. Dr. Bell herself was an interim appointment, and any permanent restructuring or permanent appointments made on her watch would necessarily bind the hands of the person eventually appointed as the permanent

Superintendent. At the same time, Dr. Bell and BBOE required some stability in the short run, because Dr. Bell took the reins of the school system with little time to prepare educational programming for the 1996-97 school year. Dr. Moyana and the other two Special Assistants had aided Dr. Bell during this transition; indeed it does appear logical to this court that their continued participation would have benefitted Dr. Bell in crafting the 1996-97 "programmatic framework."

Dr. Spann would have this court believe that these stated reasons are merely pretext for discrimination. After all, if it made logical sense to appoint Dr. Moyana and the other Special Assistants to positions as Interim Assistant Superintendents, why would Dr. Bell need to circumvent any portion of BBOE standard hiring procedure in making those decisions? Dr. Spann suggests "In essence, defendant has devised a clever system of titling positions **Acting** and/or **Interim** in order to circumvent their posting policy and allow subjective placement of employees." *Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment*, at 15 [emphasis in original]. Although it is unclear to this court why notices were not posted regarding the interim positions, it is clear that Dr. Moyana and the other Special Assistants were submitted to BBOE by Dr. Bell as candidates for the Interim Assistant Superintendent positions, and that BBOE approved those appointments in late July, 1996. BBOE policy has

hardly been circumvented. Even if this court were to think that Dr. Bell had circumvented standard procedure to such a degree that a reasonable jury might discover an inference of pretext therein, it is equally clear in this case that no suggestion arises to suggest a pretext for race discrimination, age discrimination, gender discrimination, or intersectional discrimination. Dr. Bell recommended, and the BBOE appointed, persons of the same race, age, gender, and combination thereof (*i.e.* white woman over 50 years of age), to other positions of similar responsibility at or about the same time as Dr. Moyana was appointed to the position for which Dr. Spann applied.

In sum, this court finds that Dr. Spann has failed to make out a *prima facie* case on any of her claims. Even if she had succeeded to that extent, BBOE has articulated legitimate non-discriminatory reasons for its hiring decisions, and Dr. Spann would be unable to demonstrate that such reasons are merely pretext for unlawful discrimination. Because there remain no material factual disputes, BBOE is entitled to judgment as a matter of law and its Motion for Summary Judgment is due to be granted. A separate and appropriate order will be entered.

DONE this 27th November, 1998.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE